**Floyd Thomas SCOTT, Appellant,**

v.

**The STATE of Texas.**

**No. 1220–00.**

Court of Criminal Appeals of Texas.

Sept. 12, 2001.

---

Stephen Christopher Taylor, Galveston, for Appellant.

William Lee Hon, Asst. Dist. Atty., Livingston, Matthew Paul, State's Attorney, Austin, for the State.

## OPINION

KELLER, P.J., delivered the opinion of the Court.

Can a successfully completed deferred adjudication be used to enhance punishment for a later offense when the provision permitting such enhancement did not exist at the time adjudication was deferred? We answer that question "no"

and reverse the Court of Appeals's judgment.

## 1. Background

In 1991, appellant pled guilty to the offense of indecency with a child in exchange for deferred adjudication. He successfully completed his deferred adjudication probation [1] but was later convicted of aggravated sexual assault. Over a defense *ex post facto* objection, the trial court permitted the State to use appellant's prior deferred adjudication to enhance appellant's punishment under Texas Penal Code § 12.42(c)(2). Appellant pled true to the allegation, and as a result, received a mandatory life sentence. The Court of Appeals affirmed his conviction. In his petition before us, appellant claims that use of the enhancement in his case violates the United States Constitution's prohibition against *ex post facto* laws.[2]

## 2. The Statutes

Under the Texas Penal Code enhancement scheme, a life sentence must be assessed to a defendant who commits a sexual offense listed in § 12.42(c)(2)(A) if that defendant has previously been convicted of a sexual offense listed in § 12.42(c)(2)(B). When appellant pled guilty in 1991 to indecency with a child, the deferred adjudication statute provided that a discharged deferred adjudication would not be considered a conviction except in certain enumerated circumstances:

> A dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense except that.... [3]

None of the exceptions involved the use of a deferred adjudication to enhance a subsequent offense. In 1997, § 12.42 was

---

**1.** The Court of Appeals indicates that the probation had not been terminated in accordance with the statutory provisions. *Scott v. State*, 19 S.W.3d 864, 866 n. 2 (Tex. App.—Texarkana 2000)("Article 42.12 of the Texas Code of Criminal Procedure does not apply to the present case because Scott's deferred adjudication has not been dismissed or discharged"); *Id.* at 868 n. 3 (dissenting opinion)(same). The trial court, however, indicated that appellant had "successfully completed" his deferred adjudication probation:

> THE COURT: And I believe you successfully completed your probation; is that correct?
> THE DEFENDANT: Yes, sir.

The State did not challenge this colloquy at trial, nor does the State now contend that appellant failed to discharge his deferred adjudication probation. In its brief before us, the State appears to implicitly agree with the trial court's assessment that the probation was successfully completed: "To adopt the argument advanced by Appellant would be to give the successful completion of a deferred adjudication community supervision the same status as an acquittal or a pardon." The deferred adjudication order shows that appel-

lant was placed on ten years probation. Since ten years had not elapsed when appellant was convicted of the instant offense, appellant could have "successfully completed" his deferred adjudication probation only if the trial court had granted an early dismissal. *See* Tex.Code Crim. Proc., Art. 42.12, § 5(c)(1990) ("The court may dismiss the proceedings and discharge the defendant prior to the expiration of the term of probation if in its opinion the best interest of society and the defendant will be served"). Given the posture of this case and the record, we will assume that appellant did in fact obtain an early discharge of his deferred adjudication probation.

**2.** U.S. Const., Art. I, § 10, cl. 1: "No State shall ... pass any ... ex post facto Law...." Appellant also advances an *ex post facto* claim based on the Texas Constitution. Because he does not argue that the protections differ, we will assume that the protections are the same and confine ourselves to the federal constitutional claim. *See Black v. State*, 26 S.W.3d 895, 896 n. 4 (Tex.Crim.App.2000).

**3.** Tex.Code Crim. Proc., Art. 42.12, § 5(c)(1990).

amended to add a provision that makes a deferred adjudication count as a conviction under subsection (c)(2)(B), regardless of whether sentence was ever imposed or the defendant was subsequently discharged from community supervision:

For the purposes of Subsection (c)(2):

(1) a defendant has been previously convicted of an offense listed under Subsection (c)(2)(B) if the defendant was adjudged guilty of the offense or entered a plea of guilty or nolo contendere in return for a grant of deferred adjudication, regardless of whether the sentence was ever imposed or whether the sentence was probated and the defendant was subsequently discharged from community supervision.[4]

In the same bill that amended § 12.42, the Legislature also amended the "disqualifications and disabilities" clause of Article 42.12, § 5(c) to accommodate the change in § 12.42(g)(1): *"Except as provided by Section 12.42(g), Penal Code,* a dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense" (1997 amendatory language italicized).

### 3. Statutory Construction

■ Before determining whether an *ex post facto* violation has occurred, we must first address two questions of statutory construction. We interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended.[5] The first statutory construction question is whether the 1997 amendment applies to past deferred adjudications, i.e. those that were assessed before the change in the law. The amending law contained the standard savings clause language employed for the creation of new penalties:

(a) The change in the law made by this Act applies only to an offense committed on or after the effective date of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.[6]

This language is substantially identical to savings clauses in past amendments that added new enhancement provisions.[7] We have upheld the use for enhancement of convictions which occurred before the effective date of the enhancement provision on the ground that enhancements punish the new offense rather than the prior conviction.[8] We presume the Legislature was aware of this caselaw in drafting the provision now before us.[9] We conclude that the Legislature intended to permit the use for enhancement of deferred adjudications that were assessed before the enactment of the enhancement provision.

■ The second statutory construction question is whether enhancement of pun-

---

4. Tex. Pen.Code § 12.42(g)(1).

5. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

6. Acts 1997, 75th Leg., ch. 667, § 7.

7. *See* Acts 1995, 74th Leg., ch. 250, § 4 and ch. 318, § 84.

8. *See Shaw v. State,* 529 S.W.2d 75, 76 (Tex. Crim.App.1975).

9. *Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Crim.App.1992).

ishment is a "disqualification or disability" within the meaning of § 5(c). The 1997 Legislature appeared to recognize that "disqualifications or disabilities" covers enhancements when it amended the statute to except specifically the deferred adjudication enhancement it created in § 12.42. This subsequent legislative enactment is not necessarily an indicator of legislative intent for prior versions of the statute,[10] but, as noted earlier, the version of the deferred adjudication statute applicable to appellant contained an exception that leads us to the same conclusion.

One of the exceptions to § 5(c) involved the admission of evidence at the punishment stage of a criminal trial:

(1) upon conviction of a subsequent offense, the fact that the defendant had previously received probation shall be admissible before the court or jury to be considered on the issue of penalty.[11]

The fact that the Legislature created a punishment phase evidence exemption shows that it intended "disqualifications or disabilities" to be read broadly.[12]

### 4. *Ex Post Facto*

■ Among other things, the *ex post facto* clause prohibits "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed."[13] Both the United States Supreme Court and this Court have addressed the issue of prior crimes used to enhance punishment and have declined to find an *ex post facto* violation.[14] In arriving at its holding the Supreme Court found that enhancement statutes penalize the new criminal offense being enhanced rather than the prior offense used for enhancement: "The punishment is for the new crime only, but is the heavier if he is an habitual criminal. . . . The statute, imposing a punishment on none but future crimes, is not *ex post facto*."[15]

■ The distinguishing factor in this case is the existence in the prior statute of an explicit limitation on the collateral consequences of deferred adjudication. The resolution of criminal charges will always carry the possibility of collateral consequences, and as long as those consequences are not statutorily restricted, disabilities and disqualifications which the defendant might not have anticipated may proceed from the prior cause. But when a statute explicitly restricts the collateral consequences of an offense, the defendant is entitled to rely on that restriction. Punishment for the offense is increased by the removal of the statutory restriction,

---

**10.** *Ex Parte Schroeter,* 958 S.W.2d 811, 813 (Tex.Crim.App.1997)("one session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is uniformly held to be entitled to little weight"); *But see Brown v. State,* 943 S.W.2d 35, 40 (Tex.Crim.App.1997).

**11.** Art. 42.12, § 5(c)(1)(1990).

**12.** In a slightly different context, we have held that an attorney should have known from reading the language of the statute that a discharged deferred adjudication did not constitute a "conviction" for purposes of deter-

mining eligibility for regular probation. In arriving at that conclusion, we emphasized the clause containing the "disqualifications or disabilities" language. *Id.*

**13.** *Carmell v. Texas,* 529 U.S. 513, 522, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000)(quoting *Calder v. Bull,* 3 U.S. 386, 390, 1 L.Ed. 648 (1798)).

**14.** *McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); *Shaw,* 529 S.W.2d at 76.

**15.** *McDonald,* 180 U.S. at 313–314, 21 S.Ct. 389.

and such an increase in punishment constitutes an *ex post facto* law.

The judgment of the Court of Appeals is reversed and the case is remanded for proceedings consistent with this opinion.